*40 OPINION.
Tbttssell :
Taking up the several issues in the order in which they are stated above, we find in the first issue the petitioner claiming recognition of economic obsolescence of the building it caused to be erected. The petitioner contends that the building is entirely too small and the value of the building site has grown entirely too large to permit of the successful operation of the building for many years in the face of the competition of the surrounding buildings of 50 to 70 stories. Furthermore, the present structure is not adapted to be extended so that long before the end of its natural physical life or of even the term of years considered by the respondent to be the useful life, it will be necessary to refinance the project, tear down the present building, and erect in its place a more modern structure. But these are subsequent developments. We have under consideration here but one taxable year witnessing the completion of the construction of the building and its operation for a brief eight months. The evidence is thoroughly satisfying of present conditions, but it does not show definitely or even approximately when it became known that the building would have but a short useful life. On the contrary, the petitioners are shown during the taxable' year as pioneers in this field, venturing into an undeveloped neighborhood ; seeking out tenants at terms which are now 'grown to be exceedingly low; offering inducements to especially desirable tenants; engaging the services of agents upon a commission basis to secure tenants. To allow the claim of the petitioner we must find that before, or at least as soon as completed, the building was known to be one of an exceedingly short useful life. We think that the evidence is all to the effect that the startling development of the vicinity was not determinable or perhaps even foreseen during the taxable year. This means that the deduction allowable for depre *41 ciation in tbe taxable year must be based upon either the physical life to be expected or upon the useful life as determined by tbe provisions of the lease agreement, if such useful life is the shorter. After a careful consideration of the lease agreement the intention is clear, we think, to provide for a tenancy of 41 years and 11 months unless both parties desired to terminate the agreement after a term of 20 years and 11 months. Either party had the option to continue the agreement. We do not regard it as significant that the continuation was to be effected through a new lease agreement; that was merely a device to facilitate the intended readjustment of the amount of the ground rentals. The petitioner attempts to argue that, since its capital, stock was only $10,000, it was financially irresponsible and could afford to break its agreement; we prefer to entertain the assumption that the petitioner would have done what it had agreed to do if called upon by the lessor to do so. We are satisfied that the physical life of the building was not less than the term of 41 years under the lease (after completion) and we, therefore, conclude that the allowance of the respondent, upon a basis of 41 years, is reasonable in this regard and the annual rate used for this taxable year should not be revised. Revisions of the base upon which to apply this rate are considered elsewhere in this opinion.
The second and third are issues no longer since the respondent now concedes the claims of the petitioner and this conclusion is amply supported by the facts in the case. The items incurred in 1922 of alterations for tenants, $22,765.10; interest on borrowed money, $2,700; real estate taxes, $9,092.49; and ground rentals, $26,041.67, were all improperly capitalized and should be deleted from the cost returnable to the petitioner through depreciation allowances, as should also the ground rentals incurred in 1923 in the amount of $20,833.33. All of these items, with the exception of alterations for tenants, are properly allowable as deductions in the respective years in which incurred. The allowance for depreciation in the taxable year should be reduced accordingly.
In the fourth issue, the parties are not in agreement relative to an amount of $1,000,000 of cost of construction of the building. It is not disputed that the amount was actually expended in the erection of the building. The point to be decided is whether, as contended by the respondent, the money was loaned to the petitioner and by it invested in the building, in which event it would properly be included in the cost to the petitioner, or, as contended by the petitioner, the money was contributed by the lessor in an assumption of a part of the cost of the building, and since the petitioner was *42 not liable to repay the investment, it had no depreciable interest in the amount. Upon a careful consideration of the building agreement and of the lease agreement we do not find any undertaking on the part of the petitioner to purchaser the lessor’s interest in the building or to assume any liability as a borrower of the $1,000,000. Certain of the rental provisions may have some resemblance to transactions of borrowing and repayment, but it is only superficial, for the liability of the petitioner to make the payments is that of a lessee and such is its only liability. The petitioner acquired no more than its beneficial interest as lessee and it was liable for no more than the various rental payments due from it as'lessee. We attach no importance to the early bookkeeping entries which are now shown to have been so contrary to the facts. In our opinion the cost of $1,000,000 was not borne by the petitioner, and it should not be considered in computing the deductions allowable to the petitioner for depreciation of the building.
The fifth issue relates to transactions between the petitioner and certain of its tenants. In securing two very desirable tenants the petitioner followed, as a special inducement to them, a custom prevalent in the vicinity, and assumed the liabilities of the tenants for rental pajonents over the remaining terms of two leases for the old quarters of the tenants, although knowing well at the time that because of the short terms remaining on the old leases it would probably be impossible to avoid losses due to the difficulty in finding subtenants for the short periods at rents which would anywhere near approach the liabilities assumed. The results of the operations of these leases by the petitioner are set out in the findings and there were not only ultimate losses on them, but for each of the years there Avere annual losses. The amounts of the losses are not in dispute. The petitioner readily admits that they were incurred as allowances in the nature of special reductions to the desirable tenants during the first three or four years, and contends that it must follow that the net amount of the loss in each year should be reflected in the results for that year. The rentals paid in 1923 by the petitioner were claimed as deductions in the return and were not disallowed in computing the deficiency. The 'respondent, however, now proj)oses to treat the ultimate losses as allowances in the nature of bonuses to the tenants to be capitalized as cost to the petitioner of these tenancies, returning the cost to the petitioner in pro rata annual deductions spread over the terms of the tenants’ leases in the new building of the petitioner.
We have had several occasions to consider questions with respect to commissions paid to agents for personal services in obtaining tenants and we uniformly decided that the commissions represented *43 capital costs of securing the tenants, rather than ordinary expense of the year, and a clear reflection of the income from the leases required capitalization of the costs and deduction pro rata over the periods of the tenancies. Bonwit Teller & Co., 17 B. T. A. 1019; Central Bank Block Association, 19 B. T. A. 1183; S. M. Clawson, 19 B. T. A. 1253. We think that the situation presented in the instant case is similar. The losses were intentionally incurred by the petitioner not in consideration of the first few years of operation, but rather of the terms and advantages of the entire rental periods in the new building. The petitioner argues that proration not be allowed since section 234 (a) (1) of the Revenue Act of 1921 specifically provides for the deduction of “ rental or other payments required to be made as a condition of the continued use and possession of property ” etc., etc. The answer to this is that the true nature of the transaction must govern and if it is, as we find here, capital in its true significance, being the cost of securing a valuable asset, then it should be capitalized. The commissions for securing tenants considered in the cases cited above were similarly situated in that compensation paid for personal services is specifically deductible under the statute, yet we capitalize them.
There remains the question of the amount which is properly to be capitalized and returned through pro rata deductions spread over the tenancies. The question is presented in retrospect and we know exactly what was the actual cost to the petitioner as represented in the ultimate net losses incurred. There are no facts conflicting or upon which different valuations should be based. For the purposes of this case it is unnecessary for us to look further, and we accept the ultimate net losses in evidence as the bases to be assigned as capital expenditures. The collections during the taxable year from the old leases as well as the rental payments under the old leases should, therefore, be excluded from the return and the pro rata deductions we have authorized should be allowed in recomputing the deficiency.
The remaining issue, the sixth, brings into consideration, with reference to the taxable year, the operations of the year 1922, due to the claim of the petitioner' for the allowance of a credit against net income for the taxable year of a so-called “ net loss ” for 1922. Such a credit, or rather deduction, has actually been allowed by the respondent in computing the deficiency having been claimed in the original return and left unadjusted by the respondent. The amount originally claimed was $366.88. The respondent now comes forward to contend that there was no statutory net loss and the deficiency should be accordingly redetermined and increased. On the *44 other hand, the petitioner contends that the net loss already allowed should be increased in the amount of the additional deductions for 1922 for ground rentals, interest and taxes which were improperly capitalized as costs of construction and so escaped inclusion in the deductions originally claimed.
The point to be decided is whether the petitioner was regularly carrying on a business in 1922 as it must have been to comply with section 204 (a) of the Revenue Act of 1921 which provides that as used in that section the term “ net loss ” means “ only losses resulting from the operation of any trade or business regularly carried on by the taxpayer.” The charter of the petitioner authorized a great variety of activities, but during the two years here under consideration the petitioner engaged in but one project — first, the erection, and then the operation of an office building. What might have been done is immaterial; we must confine our consideration to what was actually done. In detail then, the petitioner in 1922 leased a suitable building site, caused to be started and to be continued the erection of an office building, with intention to operate the building for profit by renting the offices to suitable tenants and providing the usual building services; also, it secured several tenants for the new building, the tenancies to begin if and when the building was ready for occupancy. In this connection it collected advance payments from the tenants and incurred liabilities for commissions to agents for personal services in securing tenants. The building was not ready for occupancy until the following year. The petitioner contends that the business was carried on from the moment that it acquired the leasehold and proceeded to start erection thereon of its building, for the reason that it was doing the things authorized by its charter. We have had occasion previously to consider this point in Harrisburgh Hospital, Inc., 15 B. T. A. 1014, wherein that petitioner was engaged during the taxable years in the erection of a building with intention to operate a hospital therein when ready for occupancy, and we decided a preliminary period of preparation— of getting ready to carry on business — was not one in which a net loss resulting from operation could be recognized. We think the instant case is comparable in that all of the activities of the petitioner were prospective — it was getting ready to operate its business. Consequently, we are of opinion that we should be controlled by our previous decision cited above. A statutory net loss to the petitioner for 1922 is unallowable.

Judgment will be entered pursuant to Rule 50.